FILED
2012 May-31  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LISA FLESHER GRABEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:11-cv-2321-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Lisa Flesher Graben ("Graben") brings this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the

Commissioner of the Social Security Administration ("SSA").  This court finds

that the Administrative Law Judge's ("ALJ") decision - which has become the

decision of the Commissioner - is supported by substantial evidence.  Therefore,

for the reasons elaborated herein, the Court will **AFFIRM** the decision denying

benefits.

# I. Procedural History

Graben filed her application for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on November 13, 2008, (R. 69, 96-98, 101-103), alleging a disability onset date of June 25, 2008, due to lumbar degenerative disc disease and mixed bipolar disorder, (R. 69). After the SSA denied her applications on January 30, 2009, (R. 73-77), Graben requested a hearing on February 11, 2009, (R. 80), which she received on April 8, 2010, (R. 45-68). At the time of the hearing, Graben was 42 years old with a high school education and at least one year of post-secondary education. (R. 47, 127). Her past relevant work includes light to medium and semi-skilled to skilled work as a nurse assistant, store manager, store owner, cashier/checker, accounting clerk, office manager, and glass plant inspector. (R. 64). Graben has not engaged in substantial gainful activity since June 25, 2008. (R. 22).

The ALJ denied Graben's claims on July 2, 2010, (R. 29), which became the final decision of the Commissioner when the Appeals Council refused to grant review on April 29, 2011, (R. 1-6). Plaintiff then filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

# II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Graben is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Graben had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One.  (R. 22).  Next, the ALJ found that Graben's suffered from the severe impairments of "lumbar degenerative disc disease and status post lumbar surgery x 2," *id.*, but that Graben's "medically determinable mental

impairments of depression, anxiety, and a pain disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. 24). The ALJ then proceeded to the next step and found that Graben did not satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 25). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with some additional limitations. The claimant is restricted to occasionally standing and walking. The claimant would need to change position every hour or so for 1-2 minutes throughout the 8-hour workday.

(R. 25). Moreover, in determining Graben's severe impairments and RFC, the ALJ assigned "some, but not great weight . . . to the opinion of Dr. [Jon G.] Rogers as contained in Exhibit 9F in that his opinion is not consistent with his examination of the claimant or with the other medical evidence of record." (R. 28). Thus, in light of Graben's RFC, the ALJ held that Graben "is capable of performing past relevant work as an account clerk and an office manager. This work does not require the performance of work-related activities precluded by the

claimant's residual functional capacity." (R. 28). Consequently, the ALJ concluded that Graben "has not been under a disability, as defined in the Social Security Act, from June 25, 2008, through the date of this decision." *Id.*

## V. Analysis

The court turns now to Graben's contentions that the ALJ committed reversible error because she (1) "failed to evaluate Plaintiff's depression beyond the second step of the sequential evaluation process" and (2) "failed to fully and fairly develop the record and substituted her opinion for that of the psychological expert." Doc. 9, at 7, 9. Based on its review of the record, the court disagrees that the ALJ committed reversible error.

A.    *The ALJ's finding that Graben's mental impairments are not "severe" is supported by substantial evidence.*

On January 20, 2009, Graben underwent a comprehensive psychological evaluation by Jon G. Rogers, Ph.D. (R. 308-315). Graben "arrived on time . . . . Her appearance was good. She was dressed appropriately. She was nicely groomed. Her hygiene was good. Her facial expression was alert. She had no remarkable mannerisms. Motor activity was average. Physical appearance was unremarkable. Her attitude was cooperative." (R. 310). Similarly, Graben's "orientation as to time, place, and person was good." *Id.* However, Graben's

"affect was restricted.  Her mood appeared anxious and depressed.  She reported that most of the time she feels 'horrible . . . I don't ever feel good.'" *Id.* (alteration in original).  Graben reported to Dr. Rogers that mental problems "affected her work, 'I couldn't concentrate . . . missed several days of work . . . cried a lot.'  She was seen most recently in 2005.  She was prescribed Seroquel, Effexor, Serzone, Prozac, Paxil, Zolof, and Wellbutrin in the past; she is currently taking Xanax." (R. 308).  Graben also reported various depression, anxiety, and manic-like symptoms including being easily fatigued, suicidal ideation, difficulty concentrating, irritability, trouble falling and staying asleep, racing thoughts, taking on big projects, spending too much money, acting nasty to people, and anger problems.  (R. 308-309).  Graben maintained that during the day she usually engages in "reading, crossword puzzles, and [nursing] school."  (R. 310).

Dr. Rogers found that Graben correctly performed the serial sevens subtraction task and correctly answered all three of the WAIS math problems.  (R. 311).  Graben "could correctly repeat 6 digits forward and 4 digits backward and could recall three objects after five minutes."  *Id.*  As it relates to "Thought Process," Dr. Rogers found that "[b]locking, muteness, repetitions, flight of ideas, *etc.*, were not observed.  Loose associations, tangential, or circumstantial thinking were not observed.  Stream of talk and mental activity were normal.  Speech was

normal." *Id.*  Graben also reported past physical abuse by her husband that still affects her as she experiences flashbacks, nightmares, and lack of trust.  *Id.* Conversely, Dr. Rogers determined that "Graben's judgment was unimpaired [and] [i]nsight was good."  *Id.*

Based on this evidence, Dr. Rogers diagnosed Graben with bipolar disorder mixed (most recent episode manic) and provided that Graben maintained a "50" Global Assessment of Functioning ("GAF").  Moreover, Dr. Rogers found that the "extent of her mental impairment is moderate to severe," but that "[t]his claimant should be able to perform most activities of daily living."  (R. 313). Finally, Dr. Rogers concluded that "Ms. Graben's ability to understand, remember, and carry out instructions would be mildly impaired.  Her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting would be severely impaired."  (R. 314).

In applying the second step of the five step sequential process, *see McDaniel*, 800 F.2d at 1030, the ALJ determined that Graben only suffered from the *severe* impairments of lumbar degenerative disc disease and status post lumbar surgery x 2—*not* depression or bipolar disorder.  (R. 22).  The ALJ rejected Dr. Rogers' assessment because the ALJ found it was not consistent with Dr. Rogers' examination or the medical record as a whole.  (R. 28).  It is this decision by the

ALJ that Graben challenges.

To ascertain the severity of a mental impairment, the agency regulations establish that the ALJ must assess four functional limitation criteria: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a.[2] The regulations further provide that, in some circumstances, these functional limitations may not rise to the level of a "severe" impairment for purposes of step two in the sequential process. *See* 20 C.F.R. § 404.1520a-(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); 20 C.F.R. § 404.1521; *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).

In reaching her conclusion, the ALJ relied on "the four broad functional areas set out in the disability regulations for evaluating [the severity of] mental disorders," and found only mild functional limitations.  (R. 24) (citing 20 C.F.R.,

---

[2] "When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more." 20 C.F.R. § 404.1520a-(c)(4).

Part 404, Subpart P, Appendix 1). More specifically, the ALJ found that Graben's mental impairments resulted in "no more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild deficiencies in concentration, persistence or pace." (R. 25). Graben argues that the ALJ's conclusion is not supported by the substantial evidence, and, based on Dr. Roger's psychological evaluation, her depression and other mental impairments amount to more than a "'minimal' or 'light' level of interference with the . . . ability to work." Doc. 9, at 8. In other words, Graben asserts that she satisfies step two of the sequential process. *Id. See also McDaniel*, 800 F.2d at 1030.

The court disagrees because the ALJ properly analyzed the four functional limitation criteria regarding the severity of mental impairments. First, the ALJ noted that Graben "showed good concentration and attention during her consultive examination by Dr. Rogers. The claimant was able to perform serial sevens. The claimant was able to correctly answer three math problems. She was able to repeat 6 digits forward and 4 digits backwards. She was able to recall three objects after a five minute delay. She was able to discuss her activities the day prior to and the day of the examination." (R. 24, 311). Furthermore, on December 23, 2008, Graben completed a "Function Report" for the SSA, and provided that she went to school for a few hours in the morning and also worked on homework and

crossword puzzles.  (R. 134).  At the hearing, Graben testified that she gave up

school because of constant pain and the side-effects of her pain medications—not

depression or some other mental impairment.  (R. 49).  Finally, Dr. Rogers'

evaluation specifically stated that "[b]locking, muteness, repetitions, flight of

ideas, *etc.*, were not observed.  Loose associations, tangential, or circumstantial

thinking were not observed.  Stream of talk and mental activity were normal . . . .

Ms. Graben's judgment was unimpaired [and] [i]nsight was good."  (R. 311).  Dr.

Rogers also concluded that "Ms. Graben's ability to understand, remember, and

carry out instructions would be mildly impaired."  (R. 314).  Accordingly, the

substantial evidence supports the ALJ's finding that Graben suffers from "mild

deficiencies in concentration, persistence or pace."  (R. 25).

Second, as it relates to "activities of daily living," the ALJ provided that

Graben's

> Function Report indicates that the claimant's daily activities included
> doing homework, crossword puzzles, and attending school in the
> morning.  In fact, the claimant reported in the Function Report that
> her activities of reading and doing crosswords had increased since she
> alleges that she became disabled.  The claimant reported that she did
> not normally need reminders concerning taking care of her grooming
> or taking her medication.  She reported that she drives a vehicle.  She
> said that she is able to pay bills, count change, handle a checking
> account, and use a checkbook/money orders.  She said that she is able
> to follow written and spoken instructions.  The undersigned also
> notes that the claimant completed the Function Report by herself.

She did so in a thorough and neat manner.

(R. 24) (citing R. 134-141).  Conversely, in her Function Report, Graben also provided that she needs some assistance to adequately perform personal care; however, this assistance is required based on back pain, not a mental impairment. (R. 135).  Indeed, Dr. Rogers concluded that Graben "is able to function independently," and that she "should be able to perform most activities of daily living."  (R. 312-313).  *See also* 20 C.F.R., Part 404, Subpart P, Appendix 1, section 12.00 (providing that, when assessing activities of daily living, "[w]e will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction").  Therefore, the substantial evidence also supports the ALJ's conclusion that Graben's mental impairments "result[] in no more than mild restriction of activities of daily living."  (R. 25).

Similarly, the ALJ's determination that Graben experiences "mild difficulties in maintaining social functioning," is supported by the substantial evidence.  *Id.*  The ALJ provided that Graben "attended school for up to four hours a day throughout 2008.  Thus, the claimant has demonstrated the ability to work around others without being disruptive or disrupting others."  (R. 24).  Indeed, as previously stated, Graben testified at the hearing that she stopped attending school because she "had become unable to perform in the clinicals.  I had to stand up a

lot.  During classes we would have to sit for long periods.  I can't do that anymore.

I had a hard time focusing on homework and assignments of that nature, so, I just -

- I just had to stop."  (R. 49).  In other words, Graben offers no indication that her

inability to function in a social setting created the need to stop attending school.

Moreover, Graben stated in her December 23, 2008 Function Report that,

"fairly often," she spends time sitting and talking with others, (R. 138); can follow

written and spoken instructions, (R. 139); and gets "along fine with authority," (R.

140).  Conversely, Graben stated in her Function Report that, "I am depressed

about my situation and a little angry, so it makes me take things out on my family

because I am in so much pain," (R. 139), and that her illnesses, injuries, and

conditions affect "getting along with others," *id.*  However, Graben briefly held

two jobs after her alleged onset date,[3] and she testified at the hearing that back

pain forced her to quit these jobs—not some issue with social functioning.  (R. 51-

53).  Thus, while the evidence reveals some impairments in Graben's social

functioning abilities, the evidence also supports the ALJ's finding that these

limitations are mild in degree.

Finally, the court agrees that "[t]here is no [medical] evidence that

---

[3] The ALJ apparently found that this employment failed to constitute "substantial gainful activity," (R. 22), and the court finds no reason to upset this decision.  *See* 20 C.F.R. § 404.1574.

[Graben's] mental impairment has ever resulted in any episodes of deterioration or decompensation, of extended duration."  (R. 25).  Generally,

> Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R., Part 404, Subpart P, Appendix 1, section 12.00(C)(4).  There is no evidence in the record, medical or otherwise, that Graben suffered from an "episode of decompensation," and indeed, Graben never makes such an assertion. *See generally* doc. 9.  Accordingly, the substantial evidence also supports this conclusion.[4]

---

[4] Even though not raised by Graben, the court notes that the ALJ properly afforded Dr. Samuel D. Williams' Psychiatric Review Technique Form ("PRTF"), (R. 320-333), "some, but not great weight," as a non-treating and non-examining source. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986); 20 C.F.R. 404.1527(e).  Indeed, the Eleventh Circuit instructs that "[a]gency regulations require the ALJ to use the 'special technique' dictated by the PRTF for evaluating mental impairments . . . . This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts for functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation' . . . . The ALJ is required to incorporate the results of this technique into the findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(e)(2)).  Here, the ALJ analyzed all functional areas, and the substantial evidence supports her conclusions regarding the degree of limitation. *See id.* (establishing that ALJ may comply with the "mode" of the PRTF).  Accordingly, even though Dr. Williams' PRTF found that Graben suffered from "moderate," as opposed to "mild," limitations in social functioning and concentration, (R. 330), for the reasons stated above and given the fact that Dr. Williams is a

Thus, consistent with the evidence of record, the ALJ rated Graben's degree of limitation in "the first three functional areas as 'none' or 'mild' and 'none' in the fourth area."  20 C.F.R. § 404.1520a-(d)(1).  As such, the ALJ properly found Graben's mental impairment *not severe* based on the assessed functional limitations.  However, the regulations provide an exception to this general conclusion if "the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  *Id.*  Here, certain statements in Dr. Rogers' psychological evaluation seemingly indicate more than a minimal limitation; however, the ALJ only gave Dr. Roger's opinion "[s]ome, but not great weight" because "his opinion is not consistent with his examination of the claimant or with the other medical evidence of record . . . ."  (R. 28).  Graben's second contention of error concerns this decision.

B.    *The ALJ's decision to reject certain conclusions in Dr. Rogers' evaluation is supported by substantial evidence.*

Graben argues that the ALJ improperly substituted her own medical

---

non-treating and non-examining medical source, the ALJ committed no error in finding that the entire record only demonstrated mild limitations in these two functional areas.  *See* 20 C.F.R. 404.1520a-(e)(4) ("At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."). *See also* (R. 330) (Dr. Williams' PRTF finding "mild" limitations in Graben's activities of daily living and no episodes of decompensation).

judgment for that of Dr. Rogers because the ALJ "provided no rationale for rejecting the [medical] opinion of [Dr. Rogers]." Doc. 9, at 9. More specifically, Graben maintains that the ALJ failed to account for Dr. Rogers' conclusions that Graben possessed a 50 GAF, (R. 312), that "[t]he extent of her mental impairment is moderate to severe," (R. 313), and that her "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting would be severely impaired," (R. 314). Doc. 9, at 9-10. However, the court finds that the substantial evidence supports the ALJ's decision not to afford these conclusions controlling weight.

Generally, when considering an examining, non-treating medical opinion, *see* 20 C.F.R. § 404.1502, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Additionally, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). Here, the court agrees with the ALJ that Dr. Rogers' conclusions regarding the severity of Graben's mental impairment are both internally inconsistent and unsupported by the record as a whole. (R. 28). *See Harwell v.*

*Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (per curiam) ("[T]he ALJ may

reject the opinion of any physician when the evidence supports a contrary

conclusion."). *See also Crawford v. Comm'r of Social Security*, 363 F.3d 1155,

1160 (11th Cir. 2004) (upholding ALJ's decision to discount chiropractor

Reckford's opinion, in part, because "Reckford's findings of disability are

inconsistent with his own treatment notes and unsupported by the medical

evidence").

First, Dr. Rogers offered little objective evidentiary support for the

conclusion that Graben suffers from a moderate to severe mental impairment.  (R.

308-314).  Dr. Rogers noted that Graben originally received treatment by a mental

health professional in 1998, and most recently visited a mental health professional

in 2005—over three years prior to this January 20, 2009 evaluation.  (R. 308).

Graben also adequately performed the serial sevens subtraction task, correctly

answered all three WAIS math problems, properly repeated six digits forward and

four digits backward and could recall three objects after five minutes.  (R. 311).

Moreover, "[b]locking, muteness, repetitions, flight of ideas, *etc.*, were not

observed.  Loose associations, tangential, or circumstantial thinking were not

observed.  Stream of talk and mental activity were normal.  Speech was normal . . .

[and] Ms. Graben's judgment was unimpaired.  Insight was good." *Id.*  However,

despite these objective observations revealing no mental impairment, Dr. Rogers found—based on subjective complaints of depression—that the "extent of [Graben's] mental impairment is moderate to severe." (R. 312-13). Thus, given the benign objective observations, Dr. Rogers' lack of explanation for his conclusions provides support for the ALJ's decision to afford these conclusions little weight. *See* 20 C.F.R. § 404.1527(c)(3).

Second, Dr. Rogers' conclusions are inconsistent with the record as a whole. Namely, there is no other evidence of a moderate to severe mental impairment. Graben reported to Dr. Rogers that she last received medical treatment by a mental health professional in 2005, (R. 308), and Graben presents no other medical records from a treating mental health professional. *Cf. Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (upholding ALJ decision to discredit claimant's subjective pain testimony because "this pain had not require[d] routine or consistent treatment, and [claimant] often went for months or years between complaining of this pain to his physicians"); *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 571-72 (6th Cir. 1989) (finding that substantial evidence supported the ALJ's determination that claimant suffered from a non-severe psychological impairment where claimant received no treatment from any psychologist or psychiatrist prior to the ALJ hearing, and the "only suggestion in

the record that the claimant has any type of severe psychological impairment was based on an evaluation of the claimant made less than two weeks prior to the hearing").

Indeed, despite taking certain anti-depression medications, the medical records from Graben's treating physicians offer no support for a "moderate to severe" mental impairment. Graben's July 21, 2008 pre-back surgery physical by Dr. Larry M. Parker at the Crestwood Medical Center in Huntsville, Alabama provides no indication of depression or anxiety. (R. 233-234). Similarly, Graben visited Dr. Parker at the Orthopaedic Center from May 1, 2008 until November 11, 2008, and the medical records from these visits—including sections concerning "Past Medical History"—also offer no complaints of depression, anxiety, or other mental impairments. (R. 245-255). Moreover, Graben's August 20, 2007 – October 12, 2009 medical records from the Tennessee Valley Pain Consultants at the Huntsville Hospital Center for Pain Management note a past medical history of bipolar disorder but provide little, if any, indication of moderate to severe depression or anxiety related symptoms. (R. 266-278). Specifically, on November 12, 2007, December 3, 2007, June 4, 2008, January 22, 2009, June 15, 2009, and October 12, 2009, Graben presented a "mental status" of cooperative and "awake, alert, oriented x3," (R. 268, 272, 273, 360, 356, 358). On December 17, 2008,

Graben still presented as cooperative and "awake, alert, oriented x3," even though she was "tearful," (R. 271), and similarly, on March 19, 2009 and September 15, 2009, Graben reported stress but demonstrated no other signs or symptoms of a moderate to severe mental impairment, (R. 359, 357).

Furthermore, Graben went to the Decatur General Hospital on October 18, 2009, for "lower extremity edema" and "pain between shoulder blades," (R. 340); however, on this hospital visit—almost a year after Dr. Rogers' evaluation— Graben presented a normal mood / affect. (R. 350). Finally, Graben's February 2, 2010 medical records from the Tennessee Valley Pain Consultants provide that Graben had a bipolar disorder and depression diagnosis, but she presented a normal mood / affect with no thoughts of harming self. (R. 352-355). And indeed, the "Nursing Note" for this February 2, 2010 visit provides "patient reports doing well on current medication regimen, keeping patient functional without side effects. Able to perform ADL's [activities of daily living] without difficulty. Continue current medication regime." (R. 353).

For these reasons, the ALJ properly discounted Dr. Rogers' consultive examination as inconsistent with the record evidence as a whole, and, accordingly, there is insufficient evidence to "otherwise indicate" a severe mental impairment. *See* 20 C.F.R. § 404.1520a-(d)(1). Thus, the court finds no reversible error in the

ALJ's treatment of Graben's mental impairment.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 31st day of May, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE